**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHANEKA DYSON, JUMP N' JAM INFLATABLES, INC., and THE ATRIUM VENUE, INC. | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | )   No: 16-CV-11509 |
| v. | ) |
| | ) |
| THE CITY OF CALUMET CITY, MICHELLE MARKIEWICZ QUALKINBUSH, NYOTA FIGGS, RANDY BARRON, JAMES PATTON, SHERYL TILLMAN, DONNA ZWART and WILLIAM NADEY | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**CIVIL COMPLAINT**

NOW COMES the Plaintiff, SHANEKA DYSON, JUMP N' JAM INFLATABLES, INC., and

THE ATRIUM  VENUE, INC. by and through their attorneys, Mary J. Grieb and Stephen

Berrios of the Shiller Preyar Law Offices, complaining of Defendants, and in support thereof

states as follows:

**INTRODUCTION**

1. This action is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiff's

   rights under the Constitution of the United States and the laws of the State of Illinois.

**JURISDICTION**

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §

   1983; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United

   States; and pendent jurisdiction for state claims as provided in 42 U.S.C. § 1367(a).

**VENUE**

1

3. Venue is proper pursuant to 28 U.S.C. § 1391(b).  The events alleged all occurred in the Northern District of Illinois.

## RELIEF

4. This Court has authority to enter a declaratory judgment and provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. §§ 2000e-6(a) and (b); 20 U.S.C. § 1682; and 42 U.S.C. §§ 13925(b)(13)(C) and 3789d(c)(3).

## THE PARTIES

5. Plaintiff Shaneka Dyson ("Ms. Dyson") is a United States citizen and resident of the Northern District of Illinois.

6. Plaintiff Jump N' Jam Inflatables, Inc. ("JNJ Inflatables") is a corporation duly incorporated under the laws of the State of Illinois; its president and sole shareholder is Shaneka Dyson.

7. Plaintiff The Atrium Venue, Inc. ("The Atrium") is a corporation duly incorporated under the laws of the State of Illinois; its president and sole shareholder is Shaneka Dyson.

8. Defendant City of Calumet City ("Calumet City") is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of Defendant Officials.

9. Defendant Michelle Markiewicz Qualkinbush ("Qualkinbush" or "Mayor Qualkinbush") is the Mayor of Calumet City.  As Mayor of Calumet City, she is responsible for executing, administering and enforcing the City's laws, customs, practices, and policies. Mayor Qualkinbush is sued in her individual and official capacities.

10. Defendant Nyota T. Figgs, ("Figgs") is the City Clerk of Calumet City.  As City Clerk, she is responsible for keeping records and accounts for the City, administering and maintaining business licenses and making official records and legislation accessible to city residents.  Figgs is sued in her individual and official capacities.

11. Defendant Randy Barron ("Barron" or "Director Barron") was Director of Inspectional Services for Calumet City for part of the time the conduct complained of in this action occurred.  As Director of Inspectional Services, he was responsible for the coordination of services for the building, housing and fire prevention bureaus and for efficient handling of inspection procedures for new construction, remodeling, rental occupancies, complaints relating to property conditions, flood plain issues and zoning.  Barron engaged in the conduct complained of while on duty, in the course and scope of his employment, under color of law.  Barron is sued in his individual capacity.

12. Defendant James Patton ("Patton" or "Special Assistant Patton") was "Special Assistant to the Mayor".  Upon information and belief, as Special Assistant to the Mayor, he carried out the Mayor's wishes, facilitated the Mayor's vision for the City and answered directly to the Mayor.  Patton engaged in the conduct complained of while on duty, in the course and scope of his employment and under color of law.  Patton is sued in his individual capacity.

13. Defendant Sheryl Tillman ("Tillman" or "Director Tillman") is the current Director of Inspectional Services.  As Director of Inspectional Services, she is responsible for the coordination of services for the building, housing and fire prevention bureaus and for efficient handling of inspection procedures for new construction, remodeling, rental

occupancies, complaints relating to property conditions, flood plain issues and zoning. Director Tillman is sued in her official capacity only.

14. Defendants Donna Zwart, and William Nadey ("ZBA Defendants") were respectively Chairman of and a member of the Zoning Board of Appeals of Calumet City at the time the conduct complained of in this action occurred. The ZBA Defendants engaged in the conduct complained of in this action while on duty, in the course and scope of their employment, under color of law. The ZBA Defendants are sued in their individual capacities.

## BACKGROUND

15. Ms. Dyson owns and operates Jump N' Jam Inflatables, Inc., a corporation duly incorporated under the laws of the State of Illinois in 2009 whose principal place of business is 1586 Hunting Drive in Calumet City, Illinois.

16. In early 2015, Ms. Dyson facilitated the incorporation of The Atrium Venue, Inc. under the laws of the State of Illinois and attempted to establish its principal place of business next door to JNJ Inflatables at 1584 Hunting Drive in Calumet City, Illinois.

17. Ms. Dyson negotiated with the RAJDEJ Holdings, LLC for additional space to house the Atrium, and on March 6, 2015, JNJ Inflatables executed lease addendum titled "Second Addendum to Lease," for a "second expansion" of the fully executed February 15, 2013 lease agreement with RAJDEJ Holdings, LLC, with a common address of 1582 Huntington Drive in Calumet City, Illinois.

18. The Second Addendum to Lease became effective on April 1, 2015 and Ms. Dyson received possession, by tender of the keys from the Landlord, on March 19, 2015.

4

19. On March 6, 2015, The Atrium applied for a new business license for a banquet hall with Calumet City, paid the applicable fees and scheduled the required inspections for March 27, 2015.

20. Simultaneously, The Atrium and Ms. Dyson began the process for obtaining building permits.

21. On March 27, 2015, Ms. Dyson met with the general scope, electrical and plumbing inspectors from Calumet City.

22. Following the March 27, 2015 meeting, the Atrium submitted revised drawings to City Engineer Chuck Keslin. After several weeks of follow up with Mr. Keslin (ultimately requiring the prodding of Director Barron), The Atrium finally received the drawings back with "assembly" on them and Director Barron instructed Plaintiffs to apply for permits.

23. In April of 2015, Ms. Dyson inquired as to a liquor license for The Atrium, which prompted a personal site visit from Mayor Qualkinbush.

24. On May 15, 2015, Ms. Dyson emailed Mayor Qualkinbush an explanation of her business. Ms. Dyson also followed up with calls every few days to Mayor Qualkinbush.

25. On June 5, 2015, permit no. 15-258 issued to perform plumbing at 1582 Huntington Drive.

26. In reliance on the letting of the permit, Plaintiffs began rehabilitating the premises located at 1582 Hunting Drive.

27. On June 11, 2015, Ms. Dyson was informed that Mayor Qualkinbush would bring her liquor license request before the City Council for discussion. Plaintiff followed-up with

Mayor Qualkinbush inquiring as to whether she needed to submit an application for the liquor license. Mayor Qualkinbush replied that Plaintiff should wait.

28. On June 15, 2015, The Atrium filed an application for a permit to add four sprinkler heads which was approved on June 30, 2016 and permit no. 15-292 was issued.

29. Also on June 15, 2015, a permit for electrical repairs, permit no. 15-458 was issued.

30. In reliance on the issuance of these permits, Plaintiffs spent time, labor and money conducting the repairs that were proposed to obtain the permits.

31. On August 4, 2015, Ms. Dyson met with Mayor Qualkinbush who provided Ms. Dyson with a blank liquor license application and informed Ms. Dyson that she had another meeting on August 13, 2015 where the issue of the liquor license would be discussed and decided.

32. Towards the middle of August, The Atrium had a second inspection for electrical and plumbing. Plaintiff passed both inspections.

33. In August, 2015, Plaintiff was informed she would receive her occupancy permit once the HVAC issue was corrected after the inspector followed up with Director Barron.

34. On August 27, 2015 Ms. Dyson met with Mayor Qualkinbush, who informed her the Atrium had outstanding issues regarding zoning. This was the first instance Ms. Dyson was made aware there was an issue with how the property was zoned. Also in that meeting, Mayor Qualkinbush told Ms. Dyson to come to the City Council meetings on September 8 and 9, 2015 to present her liquor license request.

35. On August 28, 2015, Defendant Director Barron visited the subject property and delivered Plaintiff a letter from Defendant Mayor Qualkinbush indicating that no further permits would be issued for 1582 Huntington Drive until Plaintiff obtained approval for

6

her business license.  The letter further stated, interjecting the issue of zoning for the first time, that "a banquet hall or 'special venue meeting room' license, which you requested , are not permitted under the current zoning of the property" and that "the Zoning Board and City Council must approve a change in the zoning to permit this use."

36. Calumet City Municipal Code Chapter 14 Building and Building Regulations, Article II Building Code, Section 14-66 titled "Compliance with zoning as prerequisite to permit issuance" provides that "[n]o building permit shall be issued for any structure, property or premises which does not, or will not, comply with any of the provisions of the zoning ordinance."

37. On information and belief, Section 14-66 exists to ensure that persons and entities doing business in Calumet City do not waste resources on a project prior to assurance that that project will receive zoning.

38. Further on information and believe, Section 14-66 exists to ensure that there is proper regulatory oversight and communications between new businesses engaging in new or rehabilitative construction and the City.

39. At no time prior to the August 28, 2015 letter did Plaintiffs have any reason to believe that they would not be allowed to operate a banquet hall at 1582 Hunting Drive.

40. At no time prior to August 27, 2015 did any Defendant or anyone else inform Plaintiffs that they did not have proper zoning.

41. Plaintiffs relied upon the letting of numerous permits as an assurance that they had proper zoning for a banquet hall at 1582 Hunting Drive.

42. In reliance on the permits Plaintiffs spent nearly $150,000 between the letting of the first permit by the City and the August 28, 2015 letter.

43. On September 8, 2015, Ms. Dyson attended the City Council meeting and met briefly with Alderman Antoine Collins. Mayor Qualkinbush was also in attendance and the Atrium obtained a permit for its dry bar.

44. In September of 2015, Plaintiff filed a petition with the Zoning Board of Appeals of Calumet City to allow her banquet hall as a special use.

45. On November 2, 2015, the Zoning Board of Appeals held a public hearing and on November 12, 2015, the Zoning Board of Appeals issued its "Finding of Fact and Recommendations…" in which the Zoning Board of Appeals failed to favorably recommend the petition for special use to the City Council by a tied vote of two (2) ayes to two (2) nays.

46. ZBA Defendants allowed the denial of the special use application even though there was a tied vote.

47. On December 10, 2015, The City Council met and adopted Zoning Board of Appeals' "Finding of Fact and Recommendations…" codifying the denial of the request for a special use.

48. On December 18, 2015, Plaintiff was informed that she would not be issued a business license or a liquor license to operate a banquet facility by the City Attorney Mark H. Sterk.

49. When Plaintiffs inquired as to means to appeal the denial, they were informed that they would have to begin the process anew.

50. On May 10, 2016, in the alternative, Ms. Dyson submitted another business license application with a proposed a new business plan in lieu of The Atrium, for a Youth Center for teens between the ages of 14 and 20 named The JNJ Spot, Inc.

51. On May 12, 2016, Ms. Dyson inquired about the business application for The Atrium.

52. On May 27, 2016, Ms. Dyson followed-up with Defendants regarding the status of her business license application for The Atrium.

53. On June 7, 2016, Ms. Dyson emailed Defendant Patton regarding her business license application for The JNJ Spot, Inc. which she was told was in the process for zoning approval by Rose Bonato from Defendant Figg's City Clerk's office.

54. On June 22, 2016, Plaintiff followed up on her business license application for The JNJ Spot, Inc. with Rose Bonato from Defendant Figg's City Clerk's office.

55. On June 23, 2016, Plaintiff was informed that there was no update on her business license application for The JNJ Spot, Inc. from Ms. Bonato from Defendant Figg's City Clerk's office.

56. To date, Plaintiff has still not received a resolution or a business license for either of her proposed businesses.

57. Plaintiffs have continued to pay rent on the property that they improved.

## COUNT I

### 42 U.S.C. § 1983 –Due Process Claim

### All Plaintiffs against Defendants

58. Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

59. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deprive any person of life, liberty, or property, without due process of law.

60. Plaintiff Dyson has a property interest in a business license that was deprived by Calumet City without due process of law.

61. Plaintiffs' property interest was established when Defendant Calumet City issued various building permits by its agent and Director of Inspectional Services, Randy Barron,

62. The Defendant Calumet City's issuance of permits established that The Atrium was zoned properly according to the Defendant, City of Calumet.

63. Alternatively, in reliance on the issuance of permits by the Defendants, Plaintiffs assumed a prior special or permitted use was established for the property.

64. Alternatively, in reliance on the issuance of permits by the Defendants, Plaintiffs assumed a prior non-conforming use was already established for the property.

65. It was not until the August 27, 2015 meeting with Mayor Qualkinbush that Plaintiff was made aware that there was any issue with the zoning or her property and business license.

66. On September 18, 2015 Plaintiff filed a petition seeking a permitted or special use of the property located at 1582 Huntington Drive.

67. Defendants denied Plaintiff's petition for arbitrary and irrational reasons and by a process that was in contrast to its own Ordinance since Zoning Code Section 12.5 establishing a zoning board of appeals provides that: "[s]aid zoning board of appeals shall consist of seven (7) members appointed by the mayor by and with the advice and consent of the city council of the City of Calumet City."

68. Defendants denied Plaintiff's petition for arbitrary and irrational reasons and by a process that was in contrast to its own Ordinance since Zoning Code Appendix B Section 13.5 Amendments provides that: "[a] concurring vote of a majority of those members present at the meeting with a minimum of three (3) concurring votes shall be required to recommend granting or denying an application for an amendment."

69. Plaintiff was denied her application for a special or permitted use by a tied vote of "2 ayes and 2 nays" by Zoning Board of Appeals of only four (4) members.

70. As a result of the arbitrary and irrational decisions by Defendants, Plaintiff has suffered emotional distress, substantial economic damages, harm to her reputation and loss of the use and enjoyment of her property.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other and additional relief as this Court deems equitable and just.

## COUNT II

### 42 U.S.C. § 1983 Taking Without Just Compensation

### All Defendants against All Individual Defendants

71. Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

72. The Takings Clause of the Fifth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983 through the Fourteenth Amendment to the United States Constitution, provides that private property shall not be taken for public use, without just compensation.

73. Plaintiffs have been deprived from all economically beneficial uses of the properties referenced in the complaint *supra* through Defendants' denial of her business license.

74. Plaintiffs relied on Defendants' issuance of permits indicating the zoning of the property for the intended use was valid. Defendants' refusal to grant any of the proposed business licenses have prevented Plaintiffs from any use of her property.

75. The Defendant's denial of that usage, via denial of the business license, after issuing permits is a taking of Plaintiffs' property without just compensation.

11

WHEREFORE, Plaintiffs demand judgment against the individual Defendants, jointly and severally, for compensatory damages, punitive damages, costs, and attorneys' fees, and such other and additional relief as this court deems equitable and just.

## COUNT III

### 42 U.S.C. § 1983 Civil Conspiracy to Interfere with Plaintiff's Rights

### All Plaintiffs against All Individual Defendants

76. Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

77. Beginning in March of 2015, through the date of the filing of this Complaint, the individual Defendants, among themselves, expressly or impliedly formed a conspiracy to violate Plaintiff's constitutional rights, including her rights under the Fifth Amendment, under the Fourteenth Amendment, and to equal protection and due process under the laws.

78. In furtherance of this conspiracy, the individual Defendants agreed to deny The Atrium's business license without a basis for the denial.

79. Plaintiffs were deprived of constitutional rights and were injured, including emotional distress, substantial economic damages, harm to reputation, and loss of the use and enjoyment of property.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages, costs, and attorneys' fees, and such other and additional relief as this court deems equitable and just.

## COUNT IV

### 42 U.S.C. § 1983- Equal Protection Clause Violation

### All Plaintiffs against All Individual Defendants

80. Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

81. Defendants treated Plaintiffs differently than other similarly situation property owners by denying her special use application without a quorum of board members.

82. The denial of Plaintiffs' business license and special use application was not based on any rational governmental basis.

83. Plaintiffs were treated differently because of Ms. Dyson's affiliation with Alderman Antoine Collins.

84. The Defendants' actions in treating Plaintiffs differently were not the result of governmental incompetence and was intentional.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT V**

**42 U.S.C. § 1983- Procedural Due Process**

**All Plaintiffs against all Defendants**

85. Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

86. Defendants deprived Plaintiffs of their property without following the procedural requirements of the Calumet City Municipal Code.

87. Defendants collectively and individually deprived Plaintiffs of their property interest in a business license by denying their special use application without procedural due process.

88. The Calumet City Municipal Code establishes the Zoning Board of Appeal will have 7 members to decide matters before the board.

89. On November 2, 2015 the Zoning Board of Appeals of Calumet City met with only FOUR members present and voted on Plaintiffs' special use application, which resulted in a 2-2 tie, for and against.

90. The Zoning Board of Appeals did not table the application for a future meeting when the tie could be broken, but instead in a November 2, 2015 letter told the City Council that it could not favorably recommend Plaintiffs' banquet hall as a special use.

91. On December 10, 2015 the City Council and Mayor Qualkinbush erroneously adopted the Zoning Board of Appeals Findings of Fact and Recommendation and denied Plaintiffs' proposed special use without due process.

92. Plaintiffs had the right to have their application voted on when there were sufficient members where a tie is not possible, but instead were denied their property rights via a tie vote. A tie vote is not indicative that the special use should be denied.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VI

### 42 U.S.C. § 1983- Procedural Due Process

### All Plaintiffs against all Defendants

93. Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

94. Defendants deprived Plaintiffs of their property without following the procedural requirements of the Calumet City Municipal Code.

95. Defendants collectively and individually deprived Plaintiffs of their property interest in a business license not granting or denying Plaintiff's business license application.

14

96. Plaintiffs submitted their business license application on March 6, 2015 to the City Clerk as required by Section 54-33 of the Calumet City Municipal Code.

97. All business licenses are signed by the Mayor and issued by the City Clerk, and those are the only officers with jurisdiction over business licenses.

98. Plaintiffs have not been issued a final decision that is appealable to the Circuit Court in regards to the business license.

99. Plaintiffs were issued a letter on April 13, 2016 from Calumet City attorney Mark Sterk informing them that if they desired a banquet facility they would need to begin the petition process over.

100.      There is no statutory power granted to counsel for the City of Calumet to deny a business license.

101.      To this date neither the Mayor's office nor the City Clerk have formally denied Plaintiffs' business license application.

102.      The Defendants' decision to keep Plaintiffs' application in a state of limbo is a violation of procedural due process.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages, costs, and attorneys' fees, and such other and additional relief as this court deems equitable and just.

## COUNT VII

### State Law – Illinois Constitution, Article I, Section 2

### All Plaintiffs against All Defendants

103.      Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

104.     Defendants' selective application of their Ordinance and Zoning Code violates Article I, Section 2 of the Illinois Constitution, which provides "no person shall be deprived of life, liberty or property without due process of law nor be denied equal protection of the laws."

105.     Plaintiffs were deprived of equal protection of liberty and property by Defendants when the business license was denied on an unjust basis.

106.     Plaintiff Dyson was injured, including emotional damage, mental distress, and loss of the use and enjoyment of her property.

WHEREFORE, Plaintiff demands judgment against the Defendants', jointly and severally, for compensatory damages, punitive damages, costs, and attorneys' fees, and such other and additional relief as this court deems equitable and just.

## COUNT VIII

### State Law – Illinois Constitution, Article I, Section 15

### All Plaintiffs against All Defendants

107.     Plaintiffs re-allege and incorporate all of the allegations in the preceding paragraphs.

108. Defendants' selective application of their Ordinance and Zoning Code violates Article I, Section 15 of the Illinois Constitution, which provides that "private property shall not be taken without just compensation as provided by law, just compensation to be determined by a jury."

109. Plaintiffs were deprived of the use and enjoyment of the property, when the Defendants denied the business license.

110. The denial of the license unjustly constituted a regulatory and/or categorical taking of her

property, without just compensation, in violation of the Illinois Constitution.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for

compensatory damages, punitive damages, costs, and attorneys' fees, and such other and

additional relief as this court deems equitable and just.

## COUNT IX

### State Law – Tortious Interference

### All Plaintiffs against All Defendants

111. Plaintiff re-alleges and incorporates all of the allegations in the preceding paragraphs.

112. Plaintiff executed an addendum to her lease for a "second expansion" of her business at

1582 Huntington Drive, Calumet City, Illinois.

113. Defendants were on notice that the contract existed because Plaintiff submitted a copy of

the lease when she applied for her business and liquor license.

114. Defendants' denial of Plaintiff's business license intentionally induced Plaintiff to breach

her contract with RAJDEJ Holdings, LLC and damaged their business relationship.

115. Defendants knew that without a business license, Plaintiff would not be able to establish

a principal place of business for Plaintiff Atrium.

116. The inability to establish a principal place of business for Plaintiff Atrium, has resulted in

substantial damages to both Plaintiffs.

117. Plaintiff Atrium had several clients signed up to have their event with Plaintiff Atrium

and made down payments to reserve the space.

118. Plaintiff Dyson sent notice to Defendants about the grand opening of The Atrium.

119. Defendants were aware that Plaintiff Atrium was to open for business in August of 2015.

17

120. Defendant's denial of Plaintiffs' business license interfered with the existing contracts Plaintiffs entered into with its clients.

121. As a result of Defendants' actions, Plaintiffs suffered damage to their reputation with potential clients and their landlord due because the rent could not be paid.

122. Defendants' actions also violated Plaintiffs' valid business expectancy.

123. Defendants' wrongfully and intentionally interfered with Plaintiff's expectancy when they denied her business license even though their own Ordinance and Zoning Code permitted Plaintiff's proffered use.

124. In the absence of Defendants' denial, Plaintiff would have her business and would have been able to continue with her grand opening of The Atrium.

WHEREFORE, Plaintiffs demand judgment against the Defendants', jointly and severally, for compensatory damages, punitive damages, costs, and attorneys' fees, and such other and additional relief as this court deems equitable and just.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Respectfully submitted,

By One of Their Attorneys:

s/Stephen Berrios
Stephen Berrios
The Shiller Preyar Law Offices
601 S. California Ave.
Chicago, Illinois 60612
312-226-4590

s/Mary J. Grieb
Mary J. Grieb
The Shiller Preyar Law Offices
601 S. California Ave.
Chicago, Illinois 60612
312-226-4590