**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHANEKA DYSON, JUMP N' JAM INFLATABLES, INC., and THE ATRIUM VENUE, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16 C 11509 |
| THE CITY OF CALUMET CITY, MICHELLE QUALKINBUSH, NYOTA FIGGS, RANDY BARRON, JAMES PATTON, SHERYL TILLMAN, DONNA ZWART, and WILLAM NADEY, | ) ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a decision by Calumet City (the "City") to deny Plaintiff Shaneka Dyson a business license to operate a banquet hall. Dyson, along with two of her businesses, Jump N' Jam Inflatables, Inc. ("JNJ") and The Atrium Venue, Inc. (the "Atrium"),[1] have filed suit against the City and several of its officials, alleging, among other theories, that the City's handling of her license application violated her federal and state equal protection and due process rights, as well as constituted a taking without just compensation. The defendants responded by moving to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim for relief. Because the Court concludes that the complaint does not plausibly allege any federal constitutional violations, it grants the defendants' motion with respect to Dyson's federal claims and declines to exercise supplemental jurisdiction over the remaining

---

[1] Dyson is the president and sole shareholder of JNJ and the Atrium, (Compl. ¶¶ 6-7, ECF No. 1), so the Court refers to the plaintiffs collectively as "Dyson" throughout the opinion.

state-law claims. Nevertheless, the complaint is dismissed without prejudice. Dyson is afforded another opportunity to address the deficiencies outlined in this opinion, if she is able. Any amended pleading is due no later than February 23, 2017.

## BACKGROUND

The following facts are drawn from the complaint and are taken as true for purposes of the defendants' Rule 12(b)(6) motion. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Dyson has owned and operated JNJ in Calumet City for several years. (Compl. ¶ 15.) In early 2015, she sought to open a banquet hall called the Atrium. (*Id.* ¶ 16.) Dyson executed a lease agreement in March 2015 that allowed her to combine the property used to operate JNJ with the property next door, and renovate both into a banquet hall. (*Id.* ¶¶ 16-18.) (The two properties have since been converted into a single address—1582 Huntington Drive in Calumet City—and are referred to in this opinion simply as the "property.") On the same day, Dyson applied to the City for a business license to operate a banquet hall. (*Id.* ¶ 19.)

Dyson started the process for obtaining City approval to renovate the property in March 2015 as well. After meeting with city inspectors and a city engineer, Dyson's drawings were approved for "assembly" and she was instructed by Defendant Randy Barron, the then-director of inspectoral services, to apply for building permits, which would allow her to begin the necessary renovations. (*Id.* ¶¶ 11, 20-22.) In June 2015, Dyson was issued three building permits; one for plumbing, one for electrical work, and another for a sprinkler system. (*Id.* ¶¶ 25, 28-29.) In reliance of these building permits, Dyson began renovating the property. (*Id.* ¶¶ 26, 30.)

Around the same time Dyson applied for building permits, she also inquired with the City about obtaining a liquor license. (*Id.* ¶ 23.) That inquiry attracted the attention of Defendant Michelle Qualkinbush, the mayor of Calumet City, who visited the site in April 2015. (*Id.*) The following month, Dyson emailed the mayor an explanation of her business proposal. (*Id.* ¶ 24.)

Dyson followed up with Qualkinbush about her proposal "every few days" thereafter, and on June 11, 2015, Qualkinbush informed Dyson that she would bring the liquor license request before the city council. (*Id.* ¶¶ 24, 27.) The two met again on August 4, 2015, at which time Qualkinbush told Dyson that the liquor license would be discussed and decided during a city council meeting the following week. (*Id.* ¶ 31.)

Later in August, however, Dyson's business plan began to unravel. At first, she was informed that the property passed its electrical and plumbing inspections and that an occupancy permit would be issued once an HVAC problem was corrected. (*Id.* ¶¶ 32-33.) But then, on August 27, 2015, Qualkinbush informed Dyson that the property "had outstanding issues with zoning" and that she would need to present her liquor license request to the city council personally during a meeting in early September. (*Id.* ¶ 24.) The following day, Barron delivered a letter to Dyson which indicated that "no further permits would be issued" until Dyson obtained a business license. (*Id.* ¶ 35.) The letter further stated that "a banquet hall" or "special venue meeting room" license was not "permitted under the current zoning of the property" and that "the Zoning Board and City Council must approve a change in the zoning to permit this use." (*Id.*; *see also id.* ¶ 36.) According to Dyson, late August was the first time she was "made aware there was an issue with how the property was zoned." (*Id.* ¶ 34.) Moreover, between May 2015, when she obtained her first building permit, and August 28, 2015, the date she received the letter from Barron, Dyson spent over $150,000 renting and renovating the property. (*Id.* ¶ 42.)

In September 2015, Dyson attempted to get her business plan back on track. She first attended a city council meeting on September 8, 2015, during which she met briefly with Alderman Antoine Collins and obtained a dry bar permit for the property. (*Id.* ¶ 43.) Later in September, Dyson filed a petition with the Calumet City Zoning Board of Appeals ("ZBA") to

allow her banquet hall as a special use. (*Id.* ¶ 44.) The ZBA held a public hearing on that request on November 2, 2015, and ten days later, issued its findings and recommendations to the city council. (*Id.* ¶ 45.) By a vote of two to two, the ZBA determined not to favorably recommend Dyson's special use application. (*Id.*) The following month, on December 10, 2015, the city council met and adopted the ZBA's finding and recommendations, thereby "codifying" the denial of Dyson's request. (*Id.* ¶ 47.) The city attorney then sent Dyson a letter on December 18, 2015, which stated that she would not be issued a business or liquor license for the property. (*Id.* ¶ 48.) Dyson inquired about how to appeal the decision (with whom, the complaint does not say), and was informed that she "would have to begin the process anew." (*Id.* ¶ 49.)

In May 2016, Dyson submitted a second application for a business license, but proposed a new business plan. Instead of operating a banquet hall, she proposed to open a youth center for teens called the "JNJ Spot, Inc." (*Id.* ¶ 50.) Dyson followed up on this application several times over the next month. In early June, she emailed Defendant James Patton, the special assistant to the mayor, to check on the status of this application. (*Id.* ¶ 53.) Patton responded that the application was in the process for zoning approval by Rose Bonato of the City Clerk's office. (*Id.*) Two weeks later, Dyson followed up with Bonato, but was told there "was no update" on the application. (*Id.* ¶¶ 54-55.)

Having still not received a resolution on her request, (*id.* ¶ 56), Dyson filed suit in December 2016. She alleges in her complaint that the City's handling of her business license and special use requests violated numerous federal and Illinois constitutional guarantees, including equal protection, due process, and the prohibition of takings without just compensation. Dyson further alleges that city officials conspired to violate her constitutional rights and that the denial of her requests amount to tortious interference of contract and business expectancy, as Dyson

lost future clients and business when she was unable to open her banquet hall. In April 2017, the defendants filed a motion to dismiss the complaint under Rule 12(b)(6), arguing that Dyson failed to state any claim for relief. (Defs. Joint Mot. to Dismiss, ECF No. 30.) The motion having been fully briefed, the Court finds that none of Dyson's claims may proceed to discovery as alleged.

## DISCUSSION

The defendants move to dismiss the complaint in its entirety under Rule 12(b)(6). To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the . . . complaint and draw all permissible inferences" in Dyson's favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (internal quotation marks omitted)). However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

Dyson's federal claims rest on 42 U.S.C. § 1983. To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 696 (7th Cir. 2017) (citing

*West v. Atkins*, 487 U.S. 42, 48 (1988)). Here, Dyson alleges that several city officials, ranging from the mayor and her assistant, to the current and former directors of inspectoral services and members of the ZBA, deprived her of several of her constitutional rights.[2] Dyson also alleges, however, that the City itself is responsible for many of the same constitutional deprivations as its agents. While a municipality is subject to suit under section 1983, liability may flow to the municipality only by way of a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A *Monell* claim requires that a plaintiff plead and prove that she was injured not by the unlawful actions of a municipality's agents, but by (1) the enforcement of an express policy, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority. *Estate of Sims ex. rel. Sims v. County of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007).[3]

Among the nine counts in the complaint, there is no *Monell* claim labeled as such, even though Counts I, V, and VI allege federal constitutional violations by the City. The Court might be warranted in dismissing these claims against the City on that basis alone, but doing so would elevate form over function. The crux of this suit is that the defendants improperly denied Dyson's business license and special use requests. According to the complaint, the basis of those denials was a zoning decision that was voted on and "codifi[ed]" by the city council. (Compl. ¶ 47.) A codification of a zoning decision by the city council is nothing if not the "policy" of the City, enacted by those with final policy-making authority. *See Benedix v. Village of Hanover*

---

[2] No defendant has asserted a claim of qualified or absolute immunity.

[3] Dyson also asserts section 1983 claims against several of the municipal officers, including Qualkinbush, Figgs, Barron, Patton, and Tillman, in their official capacities. These claims are indistinguishable from the federal constitutional claims asserted against the City. *Walker v. Sheanhen*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself.") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Therefore, the Court need not address separately any claims alleged against the individual defendants in their official capacities.

*Park*, 677 F.3d 317, 318 (7th Cir. 2012) (finding that "legislation makes the elimination of Benedix's position the Village's official policy"). Thus, the Court addresses the claims against the City to the extent they would be cognizable under *Monell*; that is, to the extent they are clearly based on the City's enacted policy, rather than vicarious liability for its agent's actions. Moreover, because Dyson asserts her federal constitutional claims in a collective fashion, the Court assesses each constitutional theory as to all of the defendants at once.

## I. Class-of-One Equal Protection (Count IV)

The Court turns first to Dyson's contention that she has been deprived of the Fourteenth Amendment's guarantee of equal protection. The Equal Protection Clause prohibits state action that discriminates on the basis of membership in a protected class or that irrationally targets an individual for discriminatory treatment as a so-called "class of one." *Bunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)). Dyson proceeds under the later theory. In short, she argues that the defendants singled her out for abuse by stringing along her business license application and then pulling the rug out from underneath her, all while ignoring local law and all because of the defendants' spite for Alderman Collins, with whom Dyson is affiliated. (Pl. Mem. in Opp'n to Defs. Joint Mot. to Dismiss 17-18, ECF No. 44.) The defendants counter that Dyson's class-of-one claim fails for two reasons. First, there is a conceivable rational basis for the denial of her business license and special use requests; namely, that the property did not comply with existing city zoning requirements. (Defs. Mot. 16-17.) Second, Dyson fails to identify any similarly situated individuals to demonstrate that city officials acted irrationally. (*Id.* at 17-18.) The defendants have the better of this argument, but they are only half right.

The elements of a class-of-one claim have been in flux since the Seventh Circuit's en banc decision in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012). In that case,

the judgement dismissing a purposed class-of-one claim was affirmed by a tie vote, which resulted in three decisions. The "lead" opinion, signed by four judges, concluded that such claims arise only when a state actor intentionally singles out the plaintiff for unfavorable treatment, with both discriminatory intent and effect, and without justification—that is, for personal reasons not grounded in the official's public duties. *Id.* at 889. Judge Easterbrook penned a solo concurrence, in which he opined that a plaintiff must demonstrate only that there is no possible justification or rational basis for the defendant's actions; intent, per se, plays no rule under this approach. *Id.* at 900. Finally, the dissenters proposed a standard that requires a plaintiff to plead and prove only that he was the victim of, and was injured by, intentional discrimination at the hands of a state actor who lacked a rational basis for singling out the plaintiff; under this approach, the presence or absence of animus may have evidentiary significance but it is not dispositive. *Id.* at 913.

Whatever the resolution of this debate may be, the Seventh Circuit since has stated that even under the "least demanding standard[,] . . . a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide rational basis for the classification." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (internal quotation marks and citations omitted). "Thus, even at the pleadings stage, 'all it takes to defeat a class-of-one claim is a conceivable rationale basis for the difference in treatment.'" *Id.* (quoting *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)) (emphasis and alterations omitted).

A plaintiff in a class-of-one case typically demonstrates an absence of a rational basis by identifying some similarly situated person who was treated differently—that is, a comparator. *Id.* at 1120 (citing *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014)). But contrary to the defendant's contention, Dyson's failure to identify a comparator in the

complaint is not fatal to the claim; the existence of a comparator is not an element of the claim but simply a type of evidence that may help support it. *Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013) ("Plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints."); *Geinosky*, 675 F.3d at 748 n.3 ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case, . . . we see no basis for requiring the plaintiff to identify the person in the complaint.") So long as Dyson alleges a pattern of misconduct or acts of overt hostility that exclude any rational explanation for why local officials targeted her, her class-of-one claim survives dismissal. *See Geinosky*, 675 F.3d at 745-48 (finding plaintiff could proceed on class-of-one claim without comparator where officers from single police unit allegedly issued 24 bogus parking tickets over the course of 14 months because "[r]eason and common sense provided no answer to why [the plaintiff] was targeted that could be considered a legitimate exercise of policy discretion"); *Swanson v. City of Chetek*, 719 F.3d 780, 785 (7th Cir. 2013) (reversing grant of summary judgment on class-of-one claim where plaintiff's allegations of mayor's prolonged harassment against him showed that the mayor's actions were "illegitimate on their face" and "demonstrate[d] overt hostility").

Dyson's allegations, however, fall short of establishing a pattern of misconduct or overt hostility that excludes any rational explanation. Her story seems to be that city officials lured her into believing that she could operate a banquet hall, but then short-circuited those plans by revealing that the property was not zoned for such use and denying her special use and business license requests. (Pl. Opp'n 17-18.) As evidence of this scheme, Dyson points to the fact that city officials waited several months to raise the zoning issue and only after she had spent roughly $150,000 to get her new business up and running. She also argues that the ZBA disregarded its

own rules to deny her special use application (more accurately, elected to send her application to the city council with an unfavorable recommendation) in that it voted with less than a quorum and reached a tie vote. Finally, she asserts that after her requests were denied, she was told to start the process over again, and after she did, her application was held in limbo.

Unlike in *Geinosky* and *Swanson*, however, this story does not inevitably lead to the conclusion that Dyson was the target of an illegitimate exercise of municipal power. *See Fares Pawn*, 755 F.3d at 845 ("[A] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.") (quoting *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008)). Government abuse may be one possible explanation for what happened, but it certainly is not the only one. To begin with, it is conceivable that the City's issuance of the building permits, which supposedly led Dyson to believe the property was zoned to permit a banquet hall, was simply a mistake, perhaps due to a misinterpretation of the municipal code, oversight by some official, or some other reason. Dyson alleges that it was an "intentional" act rather than "the result of government incompetence," (Compl. ¶¶ 82, 84), but the Court need not accept this wholly conclusory allegation at face value, *Iqbal*, 556 U.S. at 681, especially when class-of-one claims must be based on something more than "ordinary and inevitable mistakes by government officials," *Geinosky*, 675 F.3d at 747 ("[T]he purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law nor to transform every claim of improper provision of municipal services . . . into a federal case.") (quoting *McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004)).

And whether permits were issued by mistake or not, there plainly was a possible rational basis for the denial of Dyson's business license and special use applications: Dyson's proposed

business did not meet the City's existing zoning requirements. The Seventh Circuit has made clear "time and again" that federal courts "are not zoning boards of appeal" and, as such, "[s]tate and local land-use decisions are entitled to great deference when constitutional claims are raised in federal court." *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) (internal quotation marks and citations omitted); *see also Maum Mediation House of Truth v. Lake County*, 55 F. Supp. 3d 1081, 1089 (N.D. Ill. July 16, 2014) ("In general, zoning ordinances imposing restrictions on use and occupation of private land . . . satisfy the rational basis test.") (citation omitted). The complaint indicates that the property was not zoned to permit use as a banquet hall or meeting venue—hence Dyson's special use request—and that the City refused to issue a business license until the zoning issue was addressed. (Compl. ¶¶ 34-35, 44-48.) Moreover, the municipal code, which Dyson cites throughout the complaint, shows that applicants must meet several requirements before the ZBA will recommend a special use request to the city council. Calumet City, Ill., Code App'x B, § 12.7 (1980) (special uses). But Dyson fails to state whether her special use application met any of the six requirements listed. Thus, she fails to negate at least one reasonable explanation for the adverse action that forms the basis of her claim.

Moreover, Dyson has not even established that the ZBA's vote on her special use application was out of the ordinary. She contends that a quorum for the ZBA consists of more than the four members who voted on her application—how many more is unclear—(Pl. Opp'n 17), but offers no support for that proposition. At most, Dyson points to a section of the municipal code that states that the ZBA "shall consist of seven (7) members." Calumet City, Ill., Code App'x B, § 12.5 (1980). But that provision says nothing about how many members must be present for a vote. *Id.* Dyson also argues that, at a minimum, the ZBA must cast three—not

two—concurring votes to recommend granting or denying a special use permit. But in support of this argument she cites to a provision that deals with zoning "amendments," not special use permits. *See id.* § 13.5(2) ("A concurring vote of a majority of those members present at the meeting with a minimum of three (3) concurring votes shall be required to recommend granting or denying an application for an amendment."). However, it is not clear to the Court—and Dyson fails to clarify—whether applications for special uses and zoning amendments adhere to the same voting standards. *Compare id. with* § 12.7 (special uses) *and* § 13.1 (jurisdiction).

Finally, although finding a conceivable rational basis ends the equal protection analysis, *Fares Pawn*, 755 F.3d at 845 ("If [the court] can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no."), the issue of animus merits a brief discussion. Dyson claims that she was targeted by the defendants because of her affiliation with Alderman Collins. But the complaint has little to say about Collins. In particular, it fails to explain who she is (other than a city council member), how Dyson is affiliated with her, or how Collins has inspired animus among the defendants. Although it is unclear whether Dyson needs to plead animus in light of the split in *Del Marcelle*, the complaint's fleeting reference to Collins would not pass muster if she does. Dyson therefore fails to plead an equal protection claim and the Court dismisses Count IV.

## II.     Due Process and Takings Claims (Counts I, II, V, VI)

Dyson also alleges that the defendants violated the substantive and procedural due process guarantees of the Fourteenth Amendment, as well as the Takings Clause of the Fifth Amendment (as incorporated by the Fourteenth Amendment). The defendants move to dismiss these claims on several grounds, including that they are not ripe, that Dyson fails to plead a threshold property interest, and that Dyson has otherwise failed to allege the remaining requirements under the Due Process and Takings Clauses. Although the Court finds that Dyson's

claims are ripe for adjudication and that there is a property interest at stake (though not the interest that Dyson posits), it agrees with the defendants that Dyson has not otherwise pled a due process or takings claim.

### A. Ripeness

The defendants contend that the takings and due process claims are barred under the ripeness doctrine set forth in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In that case, the Supreme Court held that "takings claims usually belong in state court, because the Constitution is not offended if the state pays for what it takes, and state litigation (an inverse condemnation suit) is the way to get a state to pay." *Callahan v. City of Chicago*, 813 F.3d 658, 659–60 (7th Cir. 2016) (citing *Williamson*, 473 U.S. at 172). Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015) (quoting *Williamson*, 473 U.S. at 195). The exhaustion requirement applies not only to takings claims, but also to substantive and procedural due process claims that are based on the same facts as a takings claim. *Behavioral Inst. of Ind., LLC v. Hobart Common Council*, 406 F.3d 926, 930-91 (7th Cir. 2005) (citation omitted).

The parties dispute whether *Williamson* applies in this case. The defendants contend that Dyson's takings and due process claims are bound up in the same facts—both are underlined by the City's refusal to grant a zoning exception—and that Dyson has an adequate takings remedy under 735 ILCS 30/10-5-5. (Defs. Mot. 8-10.) Dyson rejoins that the doctrine is inapplicable because her damages are much more extensive than a state court could award in an inverse condemnation action and because this case is "not simply a land use dispute," but rather a

dispute about procedures due to Dyson and the City's failure to follow those procedures. (Pl. Opp'n 14-16.)

Dyson wins this argument, but not for the reasons she suggests. The Seventh Circuit recently accepted a concession (and cited supporting authority) that, while Illinois provides a procedure in which individuals could obtain compensation for physical takings, it does not have a similar procedure for regulatory takings. *Callahan*, 813 F.3d at 660 (citing 745 ILCS 10/2–103; *Sorrells v. City of Macomb*, 2015 IL App (3d) 140763 ¶¶ 25–26, 44 N.E.3d 453, 459-60). Neither party addresses this issue, but at least one other court in this circuit has since refused to apply *Williamson* in the context of an Illinois regulatory takings claim. *See Vasquez v. Foxx*, No. 16 C 8854, 2016 WL 7178465, at *7 (N.D. Ill. Dec. 9, 2016). This Court will follow suit and proceed to the merits of Dysons' claims, especially in light of the Seventh Circuit's recent clarification that *Williamson* is a prudential rather than jurisdictional doctrine. *Kolton v. Frerichs*, 869 F.3d 532, 533-34 (7th Cir. 2017).

**B.    Protected Property Interest**

The defendants next argue that Dyson fails to establish a threshold property interest. Because Dyson alleges that the defendants' conduct constitutes a taking of her property without just compensation and without due process of law, she must first establish a protected property interest. *Bell v. City of Country Club Hills*, 841 F.3d 713, 717, 720 (7th Cir. 2016). Whether a plaintiff has a property interest protected by the Due Process or Takings Clause typically is "defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *accord Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (due process); *Daniels v. Area Plan Comm'n*, 306 F.3d 445, 459 (7th Cir. 2002) (takings). Moreover, for an interest to be constitutionally protected, the

plaintiff must show she has "a legitimate claim of entitlement to it" rather than "a unilateral expectation to it." *Bell*, 841 F.3d at 717 (quoting *Roth*, 408 U.S. at 577).[4]

Dyson's complaint and opposition brief are less than clear about what property interests are at stake in this case. For purposes of due process, the complaint alleges that Dyson has an interest in the business licenses, and to some extent the special use permit, that she was denied. (Compl. ¶¶ 60, 87, 95). But in her brief, she argues only for a property interest in the building permits and dry bar license she was issued by the City. (Pl. Opp'n 7-8). On the takings front, Dyson alleges that she was deprived of the use "of the properties referenced in the complaint *supra*," (Compl. ¶ 73), which could mean anything from her actual use of the property as a banquet hall to any one of the licenses or permits discussed above, though her brief indicates that the former is the focus of her takings claim, (Pl. Opp'n 14 ("There was no other viable use for the space outside of a banquet hall, therefore Defendants' actions constituted an over regulation and taking of property.")). Despite the lack of clarity and consistency, the Court will address each interest in turn.

The first two interests are the business license and special use permit. As Dyson impliedly admits by abandoning this argument in her opposition brief, neither qualifies as property in this case. To maintain a claim of property over a government-issued benefit, such as a license or permit, a plaintiff must show she has "a legitimate claim of entitlement to it," rather than "a unilateral expectation to it." *Bell*, 841 F.3d at 717 (quoting *Roth*, 408 U.S. at 577). That

---

[4] To be clear, property interests are not treated identically under both the Takings and Due Process Clauses; the Takings Clause views property more narrowly than the Due Process Clause. *Pro-Eco, Inc. v. Bd. of Comm'rs*, 57 F.3d 505, 513 (7th Cir. 1995) ("The Due Process Clause . . . recognizes a wider range of interests as property than does the Takings Clause."); *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104-05 (7th Cir. 1995) (same). The distinction does not matter here, though, as Dyson has an interest in the use of the property under either constitutional provision.

is, "a protected property interest exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Id.* at 719 (internal quotation marks and citations omitted); *see also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) ("[U]nless it is established that the plaintiffs had the *right* to receive the building permits, a federal cause of action does not exist.") (citations omitted). Thus, in the context of local land-use decisions, the right to receive a license or permit turns on whether "a municipal ordinance provides substantive criteria which, if met, dictate the issuance of a permit." *New Burnham*, 910 F.2d at 1480 (citing *Polenz v. Parrot*, 883 F.2d 551, 556 (7th Cir. 1989)). Dyson, however, fails to identify any ordinance that dictates when and how a business license must be issued. And although the municipal code sets forth standards for the approval of special use applications, the city council ultimately has discretion in granting such permits. Calumet City, Ill., Code App'x B, § 12.7 (1980) ("The city council **may** grant or deny any application for a special use . . . .") (emphasis added). Such discretion means that Dyson had no more than a unilateral expectation to the special use permit when she applied for it. *See Bell*, 841 F.3d at 719-20 (finding no claim of entitlement to tax rebate where language of applicable ordinance and tax rebate application form "demonstrate[d] that the City explicitly retained the discretion to reject applications from homeowners").

Nor do the building permits give rise to a protected property interest. It is true that in some instances, permits and licenses, once granted, can constitute protected property interests, at least for due process purposes. *See Image Media Adver., Inc. v. City of Chicago*, No. 17 C 4513, 2017 WL 6059921, at *4 (N.D. Ill. Dec. 7, 2017) (collecting cases). The problem here, though, is that Dyson alleges that the building permits were issued in violation of the City's zoning laws (because no permit should have issued for construction that was not consistent with zoning

requirements). (Compl. ¶¶ 34-37). That means that the permits issued to Dyson were invalid when issued and could not have provided her with a property interest in proceeding with her project. *See, e.g., Space Station 2001, Inc. v. Moses*, 118 Ill. App. 3d 658, 663, 455 N.E.2d 266, 270 (1st Dist. 1983) ("A building permit cannot be granted in violation of the terms of a zoning ordinance; an unauthorized permit is a nullity and it confers no right on the permittee.") (quoting *Ganley v. City of Chicago*, 18 Ill. App. 3d 248, 254, 309 N.E.2d 653, 658 (1st Dist. 1974)).[5]

Nevertheless, the Court finds that there is enough in the complaint to establish a property interest on which Dyson plausibly could stake her due process and takings claims—specifically, her interest in the leasehold property itself. At bottom, Dyson protests that she is unable to use the property she has leased for the business purpose she desires. The Seventh Circuit has recognized that the right to use one's land as one desires is a measure of "property" under the Constitution. *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165-66 (7th Cir. 1994) (discussing how the "references to 'property' in the Constitution reflect its Lockean heritage"; that is, property refers to "land and chattels acquired by the investment and effort or purchase from another"). Stated differently, "when the right to use property is affected by an administrative decision, *e.g.*, the denial of a special use permit, a 'deprivation' of constitutional rights is at issue and procedural due process is warranted." *C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903, 913 (N.D. Ill. 2001) (quoting *River Park*, 23 F.3d at 166); *see also Polenz*, 883 F.2d at 556-57 (finding denial of occupancy permit could amount to deprivation of property interest based on theory that action interfered with owner's exclusive right to use property). Moreover, that Dyson holds a leasehold property interest rather that a fee simple one does not

_____

[5] The Court declines to consider whether Dyson has a protected property interest in the dry bar license. It is not apparent to the Court how that license has any bearing on Dyson's federal constitutional claims. Moreover, Dyson provides no support in her brief for her theory that the dry bar license was "functionally voided" without due process. (Pl. Opp'n 8-9.)

matter. The Seventh Circuit also has recognized that "[i]f the state confiscates a leasehold interest, it must pay 'just compensation' under the takings clause of the fifth amendment . . . , a step that is only possible if leaseholds are 'property.'" *Mid-American Waste Sys., Inc. v. City of Gary*, 49 F.3d 286, 289 (7th Cir. 1994) (internal citation omitted). Thus, the Court will examine whether Dyson has met the remaining requirements under the Due Process and Takings Clauses.

### C. Substantive Due Process

The Court begins with substantive due process. This claim largely mirrors Dyson's class-of-one equal protection claim, which is unsurprising considering both types of claims address arbitrary conduct by state actors. Substantive due process protects against government power arbitrarily and oppressively exercised, either through legislative or executive action. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). But this limitation is modest and in the context of land-use decisions runs afoul of the Constitution only if the action would "shock the conscience." *GEnergy-Glenmore*, 769 F.3d at 488 (discussing how standard is synonymous with "arbitrary and capricious" and "random and irrational" standards, at least in land-use context). Having already concluded that Dyson has failed to establish that the City's denial of her special use and business license requests is conceivably rational, the Court dismisses her substantive due process claim on the same basis. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1070-71 (7th Cir. 2013) (finding no substantive due process violation under rational basis review where plaintiffs failed to negate "every conceivable basis which might support" governmental action).[6]

Even if the City's decision were irrational, Dyson's substantive due process claim would fail anyway because there is a prerequisite to advancing such a claim that she has not established. Before a court will consider if there was an arbitrary and irrational interference with property, a

---

[6] Dyson has not challenged the zoning ordinance that forbids operating a banquet hall on the property. Rather, she challenges only her ability to operate a banquet hall as a special use.

plaintiff must "first establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation[.]" *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1001 (7th Cir. 2008). Dyson has done neither. Turning to the easy question first, the Court is dismissing Dyson's procedural due process, takings, and equal protection claims, so she cannot point to an independent constitutional violation. *See LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) ("In light of our conclusion that [plaintiff] failed to state a class-of-one claim, it has no independent constitutional violation on which to base its substantive due process claim.").

Dyson does not directly address the state remedies issue in the context of her substantive due process claim, but elsewhere in her brief she contends that Illinois courts are inadequate because they cannot both correct the deprivation at issue and address her damages. (Pl. Opp'n 10-11, 15.) The Court disagrees. For starters, Dyson could have asserted an equitable estoppel claim against the City to address her license and permit issues. Illinois courts may in some circumstance prevent a municipality from enforcing a zoning ordinance—the root of Dyson's problems—where the plaintiff had begun construction on a project upon "affirmative action and apparent approval by public authorities." *Cities Serv. Oil Co. v. City of Des Plaines*, 21 Ill.2d 157, 159, 163-64, 171 N.E.2d 605, 607-09 (1961). Moreover, with regard to her damages, Dyson could have asserted the same state-law tortious interference claim that she asserts in this litigation to recover for her lost business opportunities. Therefore, because Dyson's substantive due process claim fails on several fronts, Count I is dismissed.

### D.     Procedural Due Process

Dyson's procedural due process claims do not fare any better. She argues that a number of procedural irregularities occurred during her bid to open up a banquet hall. The Court has already addressed two of those issues—that only four ZBA members voted on her special use

application and that the ZBA's vote resulted a tie—and found that Dyson has not establish that those actions were unlawful or even out of the ordinary. Even if the ZBA's vote were irregular, moreover, Dyson cannot show that that it amounted to a deprivation of due process. As a general matter, "the procedures 'due' in zoning cases are minimal." *River Park*, 23 F.3d at 166. Indeed, the Seventh Circuit has stated that "[w]hen zoning decisions are confided to a legislative rather than a judicial body," as is the case here, "the affected persons have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process." *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004) (collecting cases). The Court needn't go that far here, because the complaint fails even to suggest that Dyson lacked notice of the hearings in which her applications were discussed and decided. Nor does she allege that the hearings she attended provided no opportunity to be heard. She therefore has no basis to contend that she lacked the opportunity to seek remedial action under state law.

The other two issues that Dyson raises are not actionable either. She first contends that the defendants' decision to keep her second application for a business license (for the youth center) "in a state of limbo" violates due process. (Compl. ¶¶ 94-102.) But the Seventh Circuit's decision in *River Park* shows the futility of this argument. In that case, a property owner applied for a zoning change to permit the development of a residential subdivision. *River Park*, 23 F.3d at 165. After nominally approving the zoning variance, city officials stalled the implementation, which forced the developer to start the process over again. *Id.* After city officials sat on the developer's second application, he filed suit claiming that the city's tactics were a due process violation. *Id.* The Seventh Circuit disagreed. It held that the Due Process Clause permits municipalities to use political methods—which may mirror "procedural maneuvers that prevent[] [a] question from reaching the floor for a vote"—to decide zoning issue. *Id.* at 166. Moreover, it

found that because "the only procedural rules at stake [in zoning disputes] are those local law provides," the suit should have been brought in state not federal court, especially considering the developer could have asserted a common law writ of certiorari to contest the runaround it had receiving from the city. *Id.* at 167. The same is true here. The allegations in the complaint show that Dyson's second business license application hinge on a change in zoning, just as her first application did. (Compl. ¶¶ 50-55.) Thus, her application is subject to the (alleged) political machinations of the Calumet City government. Moreover, any grievance Dyson has about her application being held in limbo is a matter of local law in which Illinois provides adequate protection.

The final procedural issue relates to the City's improper issuance of building permits. Dyson argues that it "is axiomatic that a government body violates due process when it fails to follow the process itself has codified in law." (Pl. Opp'n 8.) Dyson's statement of the law is unavailing because she conflates the process provided by state law with the process due under federal law. A ***state*** or ***municipality's*** failure to follow its own rules does not give rise to a federal due process violation. *Indiana Land Co.*, 378 F.3d at 711 ("[A]n error of state law is not a violation of due process.") (citing *Gryger v. Burke*, 334 U.S. 728, 731 (1948); *Pro-Eco*, 57 F.3d at 514); *River Park*, 23 F.3d at 166-67 ("[T]he Constitution does not require state and local governments to adhere to their procedural promises.") (citing *Olim v. Wakinekona*, 461 U.S. 238, 248-51 (1983); *Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc)). Moreover, the cases that Dyson cites in support of her position do not hold otherwise. All but one involves rules or regulations set by Congress or a federal agency. *Yellin v. United States*, 374 U.S. 109 (1963) (Congressional committee); *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (Department of Interior); *Service v. Dulles*, 354 U.S. 363 (1957) (Secretary of State); *Antonuk v.*

*United States*, 445 F.2d 592 (6th Cir. 1971) (United States Army). And the last case, *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), deals with the denial of due process afforded by the Immigration and Nationality Act, not the Constitution.[7] The Court therefore dismisses Counts V and VI of the complaint.

### E.  Takings

Dyson's takings claim is also deficient. "Takings jurisprudence encompasses four basic claims: permanent physical invasion, deprivation of all beneficial use, exactions, and partial regulatory takings." *Goodpaster*, 736 F.3d at 1073-74 (citing *Lingle v. Chevron, U.S.A., Inc.*, 544 U.S. 528, 538-39 (2005)). Dyson contends that the City's conduct falls into the total deprivation category, (Compl. ¶¶ 72-75, Pl. Opp'n 13-14), and thus her claim is controlled by *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). In *Lucas*, the Supreme Court stated that when a regulatory action causes a property owner "to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Id.* at 1019. In so holding, however, the Supreme Court "was careful not to create the impression that all zoning decisions that may diminish an owner's potential uses of her property,

---

[7] Dyson alternatively contends that the defendants' conduct—which specific conduct is unclear—constitutes a "random and unauthorized" deprivation; thus, the Court must look at the sufficiency of her post-deprivation remedies as well. (Pl. Opp'n 10). But this argument is meritless. As alleged, this is not one of the "relatively rare" cases that involve "random and unauthorized" conduct. *Simpson v. Brown County*, 860 F.3d 1001, 1007 (7th Cir. 2017) (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Danial v. Williams*, 474 U.S. 327 (1986) and *Hudson v. Palmer*, 468 U.S. 517 (1984)). The Seventh Circuit has made clear that *Parratt* and *Hudson* do not apply "unless the government 'could not predict the conduct causing the deprivation, could not provide a pre-deprivation hearing as a practical matter, and did not enable the deprivation through established procedures and a broad delegation of power.'" *Id.* (quoting *Armstrong v. Daily*, 786 F.3d 529, 544 (7th Cir. 2015)). Not only did Dyson receive a hearing on the zoning issue, but city officials followed the prescribed process in rejecting her zoning proposal. *See id.* at 1008 (finding revocation of contractor's license was not random and unauthorized where revocation was sanctioned by county through prescribed process). At any rate, Dyson had adequate post-deprivation remedies available through state court, as discussed above.

or compel a less valuable use, are takings." *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 422 (7th Cir. 2010) (citing *Covington Court v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996)). Instead, "to qualify as a regulatory taking, the measure must place such onerous restrictions on land as to render it useless." *Id.*

The complaint does not come close to pleading a total taking. It states only that the defendants have denied (or at least effectively denied) two of Dyson's proposed uses for the property: a banquet hall and a youth venue. But it does not follow from these allegations that Dyson is unable to use the property for ***any*** economically beneficial purpose; that the defendants have denied two uses does not mean that the property is now useless. There is no indication, for example, that Dyson's lease agreement allows only for the operation of a banquet hall or special room venue. *Cf. Image Media*, 2017 WL 6059921, at *6 (finding lessee plausibly alleged that some of its leasehold interests were rendered useless by zoning ordinance where lease agreement permitted only use prohibited by ordinance). Nor are there any allegations—aside from a single conclusory statement, which the Court need not accept as true, *Iqbal*, 556 U.S. at 681—that the property cannot be used for any purpose if not as a banquet hall or meeting space.

Although Dyson stakes her all on a theory of total loss, her claim may be more appropriately viewed as a partial regulatory taking. Some regulatory actions can be so onerous that they violate the Takings Clause even without destroying all economically beneficial use of a property. *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015) (explaining that compensation is required for a "regulatory taking" that goes "too far"); *Lingle*, 544 U.S. at 538-39. To determine whether a regulation goes too far, but does not quite deprive an owner of all economically beneficial use, courts evaluate "'a complex of factors' [articulated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)], including: (1) the economic impact

of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942-43 (2017) (citation omitted).

But even under this rubric, Dyson's takings claim is subject to dismissal. While she alleges facts that show how the City's decision has impacted her economically (she claims she is out over $150,000 in rent and renovation costs, and has lost business opportunities), Dyson does not plead enough information to evaluate the other two factors. Namely, the complaint fails to identify how the property is actually zoned and what uses are permitted under its current classification. Without such information, the Court cannot evaluate the nature of the City's action or the degree that action has interfered with Dyson's investment-based expectations. Consequently, Dyson fails to adequately allege a takings claim and Count II is dismissed.

### III.    Conspiracy (Count III)

The final section 1983 claim Dyson asserts is for conspiracy, but it too falls short. As an initial matter, Dyson cannot maintain a conspiracy claim when all of her underlying constitutional violations have been dismissed. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."); *Hicks v. City of Chicago*, No. 15 C 6852, 2017 WL 4339828, at *7 (N.D. Ill. Sep. 29, 2017) ("In other words, there is no such thing as a stand-alone claim for 'conspiracy'—there must be an underlying constitutional violation.") (citation omitted).

Even if a constitutional claim had survived, the conspiracy claim still would be dismissed. Dyson's theory of conspiracy is based on the following: "Beginning in March of 2015 . . . the individual Defendants, among themselves, expressly or impliedly formed a conspiracy to violate Plaintiff's constitutional rights" and that "[i]n furtherance of this conspiracy, the individual Defendants agreed to deny [Dyson's] business license without a basis for denial."

(Compl. ¶¶ 77-78.) In short, these conspiracy allegations are nothing more than an unsupported legal conclusion that the Court is not bound to accept as true. *See Redd v. Nolan*, 633 F.3d 287, 292 (7th Cir. 2011) (refusing to accept as true allegations that two government officials "individually and/or in a conspiracy, intentionally interfered with [plaintiff's employment] by inducing the Cook County Department of Corrections to discharge Plaintiff"). Moreover, Dyson's complaint as a whole "includes not a whiff of conspiratorial agreement or any improper complicity" between the individual defendants to support Dyson's conspiracy theory. *Id.; see also Roehl v. Merriless*, No. 11 C 4886, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012) (dismissing section 1983 conspiracy claim for "fail[ure] to allege facts or circumstances upon which either an express or implied agreement between the defendants could be inferred 'above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

Dyson argues that her conspiracy allegations are sufficient for two reasons, both of which are meritless. She first contends that they satisfy *Walker v. Thomson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002), which holds that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." But *Walker* is of no help to Dyson. Even that case acknowledges that a conspiracy claim fails when the complaint does "not so much as hint at what role [a defendant] might have played or agreed to play" in relation to the allegedly unconstitutional conduct. *Id.* Moreover, Walker predates *Twombly* and *Iqbal*, and its evaluation does not address the plausibility requirement imposed by those cases. *See Roehl*, 2012 WL 1192093, at *8.

Perhaps recognizing as much, Dyson's second contention, citing *Geinosky*, is that she need only allege "a plausible account of conspiracy." (Pl. Opp'n 16.) While true, the Seventh Circuit also has stated that some conspiracy claims require "a high standard of plausibility."

*Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (discussing in context of conspiracy claim how pleading requirements are "relative to circumstances"). Moreover, even before *Iqbal* and *Twombly*, "conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Id.* At any rate, Dyson's claim is fueled by nothing more than mere suspicion that Calumet City officials have joined together to bar her from opening a banquet hall. And unlike in *Geinoksy*, 675 F.3d at 749, it is not a stretch to image that the events surrounding the denial of her requests are a product of something other than a conspiracy. Therefore, Dyson fails to sufficiently plead a conspiracy claim and Count III is dismissed.

## IV.     State Law Claims (Counts VII, VIII, and IX)

Having dismissed all of the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) ("The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.'") (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). Therefore, Counts VII through IX are dismissed without prejudice to Dyson refiling them in state court.

## V.     Individual Defendants

Because Dyson will be afforded an opportunity to replead her federal claims, and in the interest of encouraging both parties to put their best foot forward sooner rather than later, the Court will note two additional issues that, although not raised by the defendants in their challenge to the initial complaint, seem likely to surface should Dyson amend her complaint.

First, the present complaint fails to plead allegations that allow the Court to draw the reasonable inference that several of the defendants are liable on an individual basis for the constitutional misconduct alleged. Individuals cannot be liable under section 1983, of course, unless they have a "personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). That is, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Here, nothing in the complaint establishes that defendants Figgs, Barron, or Patton caused any of the alleged constitutional violations. Figgs is barely mentioned in the complaint; it provides only a description of her role as the City Clerk, which includes administrating and maintaining business licenses, and an allegation that the "City Clerk" has not "formally denied" Dyson's license application. (Compl. ¶¶ 10, 101.) But these allegations do not suggest that Figgs personally had a hand in denying the business license request. Rather, the complaint indicates that the application was rejected based on decisions made by the ZBA and city council. (*Id.* ¶¶ 44-48.)

The allegations concerning Barron, the former director of inspectional services, and Patton, the special assistant to the mayor, are similarly deficient. So far as is alleged, Barron's involvement in this case is limited to issuing the building permits, overseeing the inspection of Dyson's renovations, and informing Dyson in August 2015 that no further permits would be issued until she obtained a business license. (Compl. ¶¶ 11, 20-22, 34-35.) None of those activities, however, show that he had anything to do with Dyson's special use or business license requests. Nor does Barron's role in issuing the building permits expose him to liability; as discussed above, issuing permits in violation of local law does not raise a constitutional concern.

Patton's connection to this lawsuit is even weaker than Barron's. The only role he played was to inform Dyson that her second request for a business license was pending a zoning approval. (*Id.* ¶ 53.) That action alone does not provide an adequate basis for individual liability under 42 U.S.C § 1983.

As to the remaining individual defendants, Qualkinbush, Donna Zwart, and William Nadey (the latter two being the "ZBA Defendants"), Dyson may wish to consider whether those defendants are shielded by the doctrine of absolute legislative immunity. In *Tenney v. Brandhove*, the Supreme Court held that state legislators are absolutely immune in any suit for damages arising under section 1983 for actions that are "legitimate legislative activity" and not done "for their private indulgences." 341 U.S. 367, 376-77 (1951). The Court further declared that "the claim of an unworthy purpose does not destroy the privilege." *Id.* at 377; *see Bagley v. Blagojevich*, 646 F.3d 378, 392 (7th Cir. 2011) ("Whether an action is legislative 'turns on the nature of the act, rather than on the motive or intent of the official performing it.'") (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). The immunity has since been extended to local legislators. *Bogan*, 523 U.S. at 53-54.

The allegations against the ZBA defendants are limited to their recommendation to the city council that Dyson's special use permit be denied. That decision would seem to be a legislative one. Taking the allegations as true, the ZBA followed statutory procedures in reaching its decision. *See Bagley*, 646 F.3d at 392 ("To determine whether an act is legislative in form, courts look at whether the defendants acted pursuant to constitutional or statutory procedures.") (citations omitted). Namely, it issued findings and a recommendation on Dyson's application following a public hearing. *See* Calumet City, Ill., Code App'x B, § 12.7 (1980); (Compl. ¶¶ 44-47.) Moreover, the ZBA's role in the special use application process appears to be substantively

legislative as well. *See Bagley*, 646 F.3d at 393 (examining whether government action at issue "substantively 'bore all the hallmarks of traditional legislation'") (quoting *Bogan*, 523 U.S. at 55)). The board held a public hearing, gathered facts, and voted on whether to favorably recommend the zoning proposal. (Compl. ¶¶ 44-47.) At the very least, these actions mirror those taken by legislative committees, which have long been viewed as quintessential legislative conduct. *See Tenney*, 341 U.S. at 377-78 (discussing how Congress' investigative function is "an established part of representative government" in finding that Congressional committee was acting in legislative capacity).

Moreover, to the extent that Qualkinbush is being sued for her role in voting on the special use application, (*see* Compl. ¶ 91 (alleging that "the City Council and Mayor Qualkinbush erroneously . . . denied [Dyson's] proposed special use without due process")), she may be immune from suit as well, *see Bogan*, 523 U.S. at 55 (finding that mayor enjoyed absolute legislative immunity for introducing, voting, and signing into law a budget because his actions were "integral step" in city council's legislative process); *Biblia Abierta v. Banks*, 129 F.3d 899, 905 (7th Cir. 1997) ("We believe that rezoning (including participation in the introduction and passage of a rezoning ordinance) is a legitimate legislative activity."). Therefore, if Dyson intends to file an amended complaint, she should keep in mind that several of the individual defendants may be immune from suit, while others may not have the requisite personal connection to this litigation to maintain a federal constitutional claim against them.

\*　　\*　　\*

Accordingly, for the reasons stated above, the Court grants the defendants' motion to dismiss Dyson's federal claims pursuant to Rule 12(b)(6) and declines to exercise supplemental

jurisdiction over the remaining state-law claims. The complaint is dismissed without prejudice.

Dyson has until February 23, 2018 to file an amended complaint.

Date: January 23, 2018

John J. Tharp, Jr.
United States District Judge