# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHANEKA DYSON, JUMP N' JAM INFLATABLES, INC., and THE ATRIUM VENUE, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16 CV 11509 |
| THE CITY OF CALUMET CITY, MICHELLE MARKIEWICZ QUALKINBUSH, and DONNA ZWART, | ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## ORDER

For the reasons set forth in the Statement below, the plaintiffs' first amended complaint [59] is dismissed with prejudice. The Court grants the defendants' motion to dismiss [70] with respect to the plaintiffs' federal claims and declines to exercise supplemental jurisdiction over the remaining state-law claims. Civil case terminated.

## STATEMENT

Plaintiffs Shaneka Dyson, Jump N' Jam Inflatables, Inc. ("JNJ"), and The Atrium Venue, Inc. (the "Atrium") brought this lawsuit against the City of Calumet City (the "City") and a number of its officials. In January 2018, this Court dismissed the plaintiffs' federal claims and declined to exercise jurisdiction over the remaining state-law claims; the dismissal was without prejudice, however, and so the plaintiffs were granted leave to amend. *See generally* Mem. Op. and Order, ECF No. 58. The plaintiffs subsequently filed an amended complaint. The defendants, in turn, have now moved to dismiss that complaint.

Dyson is the president and sole shareholder of both JNJ and the Atrium. Pls.' First Am. Civil Compl. ("Am. Compl.") ¶¶ 6-7, ECF No. 59.[1] The present complaint is directed against only three of the eight defendants identified in the original complaint: the City; Michelle Qualkinbush, the City's mayor; and Donna Zwart, the chairman of the Zoning Board of Appeals of Calumet City ("ZBA"). *See id.* ¶¶ 8-10. This suit is primarily brought as an action under 42 U.S.C. § 1983, for alleged violations of Dyson's federal constitutional rights. In particular, Dyson invokes the Fourteenth Amendment's Equal Protection Clause, the guarantees of both substantive and procedural due process under the Fourteenth Amendment, and the Takings Clause of the Fifth

---

[1] For this reason, the Court will refer to the plaintiffs collectively as "Dyson" for the remainder of this opinion.

Amendment (as incorporated by the Fourteenth Amendment). In addition, Dyson also argues that she is entitled to relief under a § 1983 civil-conspiracy theory, as well as under various Illinois state-law theories.

The Court assumes familiarity with its previous opinion in this case, *see generally* Mem. Op. and Order, and recounts only the central facts here.[2] To summarize, Dyson has owned and operated JNJ, which is located in Calumet City, for several years. Am. Compl. ¶ 11. In early 2015, she sought to open a banquet hall called the Atrium. She executed a lease agreement in March 2015 that would allow her to combine the property that housed JNJ with the property next door and renovate both into a banquet hall. *See id.* ¶¶ 12-14. The two properties were converted into a single address—1582 Huntington Drive, in Calumet City—and are referred to collectively as "the property" in this opinion. That address is zoned as "SU: Special Use" under Calumet City zoning regulations. *See id.* ¶ 15.

That same month, Dyson applied to the City for a business license to operate a banquet hall, as well as for City approval to renovate the property. *See id.* ¶¶ 17-18. In June, she received three building permits: one for plumbing, one for electrical work, and a third for a sprinkler system. *Id.* ¶¶ 23, 26-27. In reliance on these permits, Dyson began renovating the premises. *Id.* ¶ 24. Dyson had also inquired as to obtaining a liquor license for the Atrium, which attracted the attention of Mayor Qualkinbush. *See id.* ¶ 21. Qualkinbush visited the proposed Atrium site in April 2015 and later informed Dyson that she would bring Dyson's request for a liquor license before the City Council for discussion. *See id.* ¶¶ 21, 25.

Soon thereafter, Dyson's plans began to fall apart. On August 27, 2015, she met with Qualkinbush, who informed her—for the first time—that "the Atrium had outstanding issues regarding zoning." *Id.* ¶ 32. The following day, Dyson was visited by Randy Barron, the director of inspectorial services for Calumet City. Barron delivered Dyson a letter from Qualkinbush stating that no further permits would be issued for 1582 Huntington Drive until Dyson obtained approval for her business license. The letter said that "a banquet hall or 'special venue meeting room' license, which you requested, are not permitted under the current zoning of the property," and that "the Zoning Board and City Council must approve a change in the zoning to permit this use." *Id.* ¶ 33. Dyson had spent nearly $150,000 between getting her first permit from the City and the day she received this letter. *See id.* ¶ 40.

In September 2015, Dyson attempted to get her plan back on track. She attended a City Council meeting on September 8, during which she obtained a dry bar (non-alcohol) permit for the property. *See id.* ¶ 41. That same month, she filed a petition with the ZBA to allow her banquet hall as a special use. *Id.* ¶ 44. In November, the ZBA failed to favorably recommend the petition for a special use to the City Council, by a tied vote of two to two. *See id.* ¶ 45. The following month, the City Council met and adopted the ZBA's findings, effectively codifying the denial of Dyson's request. *Id.* ¶ 59. On December 18, 2015, Dyson was informed that she would not be issued a business license or a liquor license to operate a banquet facility. *Id.* ¶ 60. When she asked

---

[2] As it must in evaluating a motion to dismiss, the Court accepts the well-pleaded facts in the amended complaint as true and draws all permissible inferences in favor of the plaintiffs. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

if there was a means to appeal the denial, Dyson was told she would have to begin the process anew. *Id.* ¶ 61.

In May 2016, Dyson submitted a new business license application with a different proposed business plan. She proposed to open a youth center for teens, to be named The JNJ Spot, Inc. *Id.* ¶ 62. Dyson followed up on this application several times over the following month, but received no update. She alleges that, as of the time of filing of the amended complaint, she had still not received a resolution or a business license for either of her proposed businesses. *Id.* ¶ 68.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff does not need "detailed factual allegations," but more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are required. *Twombly*, 550 U.S. at 555. Determining whether a complaint plausibly states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The factual allegations in Dyson's amended complaint largely mirror those in the original complaint. By the Court's calculations, 117 of the amended complaint's 146 paragraphs are either identical or virtually identical to paragraphs that appeared in the initial complaint. The Court therefore focuses its analysis in this opinion primarily on the areas where Dyson makes new factual allegations in the amended complaint or new legal arguments in her response in opposition to the defendants' motion.

Again, all of Dyson's federal claims in this complaint rest on 42 U.S.C. § 1983, which provides a cause of action for any individual when that person is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" and the deprivation takes place "under color" of state law. The federal constitutional theories that Dyson invokes are essentially the same as those in the prior complaint, though there are two minor differences. First, the amended complaint clarifies that it intends to state a claim under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), against the City in Counts I (substantive due process), V (procedural due process), and VI (also procedural due process).[3] Second, Count II—dealing with the Takings Clause—is now targeted against "All Defendants" rather than just the "Individual Defendants." Dyson does not expressly invoke *Monell* in Count II, but the Court understands her to be making a *Monell* claim against the City in that count as well. As in the Court's previous opinion, "because Dyson asserts her federal constitutional claims in a collective fashion, the Court assesses each constitutional theory as to all of the defendants at once." Mem. Op. and Order 7.

---

[3] *Monell* requires that, to bring a § 1983 suit against a municipality, a plaintiff must allege that his or her injury stemmed from the execution of a government's "policy or custom." 436 U.S. at 694.

## I. Equal Protection: Class of One (Count IV)

Dyson's Equal Protection Clause count again proceeds under a "class of one" theory. The elements of such a claim have been in flux in this circuit recently, as this Court's previous opinion noted. *See id.* at 7-8. Nevertheless, even under the least demanding standard discussed by the Court of Appeals in its *en banc* decision in *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887 (7th Cir. 2012), plaintiffs pressing a class-of-one theory "must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015). Under this standard, "a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification," meaning that even at the pleadings stage, the existence of any conceivable rational basis for the difference in treatment will defeat a class-of-one claim. *Id.* (citations and internal quotation marks omitted).

In its previous opinion, this Court noted that there "plainly was a possible rational basis for the denial of Dyson's business license and special use applications," which was that "Dyson's proposed business did not meet the City's existing zoning requirements." Mem. Op. and Order 10-11. The Court observed that the property was not zoned to permit use as a banquet hall or meeting venue, and that Dyson had not shown that her special-use application met the requirements set out in the Calumet City Municipal Code before the ZBA would recommend a special use. *See id.* at 11; Calumet City, Ill., Code App'x B, § 12.7 (1980). In response, Dyson now contends that the plaintiffs met all of the standards for special uses identified in the relevant municipal code section. *See* Am. Compl. ¶ 48. The complaint, however, merely restates the code's requirements more or less verbatim and asserts that Dyson's proposed use met them, without providing any additional details. *Compare id.* ¶¶ 49-54, *with* Calumet City, Ill., Code App'x B, § 12.7 (1980). These formulaic recitations regarding satisfaction of the code's requirements are "conclusory" and thus are not entitled "to the presumption of truth." *Iqbal*, 556 U.S. at 681. Dyson has thus failed to negative a conceivable rational basis for the denial of her special-use application, and so Count IV is dismissed.

While this by itself is enough to end the class-of-one analysis, the Court briefly notes several other flaws with Dyson's arguments, some of which are relevant to her other claims. First, the amended complaint asserts that the defendants treated Dyson differently from other similarly situated property owners "by denying her special use application without a quorum of board members." Am. Compl. ¶ 100. As noted in this Court's previous order, while one provision of the municipal code states that the ZBA shall consist of seven members, it does not say how many of them must be present for a vote. Mem. Op. and Order 11. Dyson also argues, again, that the ZBA must cast three, not two, votes to deny a special-use permit. But, once again, the provision she cites on this point deals with zoning "amendments," not special-use permits. Dyson states that "[z]oning amendments, special uses, variations and administrative adjustments functionally accomplish the same effect, modifying land usage dictated by the municipality." Am. Compl. ¶ 47. This, however, is merely a policy argument as to why the provision ***should*** be read as applying to votes on special uses. It does not provide any reason to believe that the provision is ***actually*** interpreted that way. Thus, as in the previous complaint, "Dyson has not even established that the ZBA's vote on her special use application was out of the ordinary." Mem. Op. and Order 11.

4

Second, Dyson argues that the ZBA's decision to deny the special-use permit was irrational because it was based on an insufficient number of parking spaces, but that the Calumet City code does not set any such parking requirements. *See* Am. Compl. ¶¶ 55-57; Pls.' Mem. in Opp'n to Defs.' Joint Rule 12(b)(6) Mot. to Dismiss Pls.' Am. Compl. ("Mem. in Opp'n") 15, ECF No. 79. The absence of detailed parking requirements in the City code, however, does not render concern that a proposed special use does not provide adequate parking irrational, particularly where the proposed special use is one that likely would require an unusually high number of parking spaces— like a banquet hall. The rationality test, moreover, "does not ask whether the benign justification was the ***actual*** justification. All it takes to defeat the plaintiffs' claim is a ***conceivable*** rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (emphasis in original). As noted above, there is a conceivable rational basis for the ZBA's decision. Thus, even accepting Dyson's argument as true, the fact that the ZBA's stated reason may not have been the actual basis for its action does not provide a proper basis for a class-of-one claim in this case.

Finally, in this complaint Dyson attempts to bolster her contention that the ZBA's decision was the result of animus, based on Dyson's affiliation with Alderman Antoine Collins. *See* Am. Compl. ¶ 102. Dyson asserts for the first time in this complaint that at the September 8, 2015, City Council meeting, Collins "advocated for Plaintiffs' business and gave testimony in support of it," and that Collins "was going to run for mayor of Calumet City in the next election." *Id.* ¶¶ 42-43. That is the sum total of the amended complaint's allegations about Collins, and Dyson's response brief does not even mention Collins's name. *See generally* Mem. in Opp'n. The implication, presumably, is that Mayor Qualkinbush might have had some reason to bear animus toward someone associated with her potential mayoral rival. But neither the amended complaint nor the response brief spells out this theory in any greater depth. Even in the absence of a rational basis for the ZBA's decision, these threadbare allegations by themselves would not raise any suggestion of animus. Dyson's speculation in this regard warrants no more credence than would a bare suggestion that Qualkinbush was trying to garner Dyson's electoral support had she greenlighted Dyson's project.

## II. Due Process and Takings (Counts I, II, V, and VI)

Dyson also argues, again, that the defendants violated both the substantive and procedural due process guarantees of the Fourteenth Amendment, as well as the Takings Clause of the Fifth Amendment (as incorporated by the Fourteenth Amendment). All of these claims require Dyson first to establish a protected property interest. *See* Mem. Op. and Order 14. In its previous opinion, the Court concluded that Dyson had plausibly alleged a property interest on the basis of her interest in the leasehold property. *Id.* at 17-18. It determined, however, that Dyson had no property interest in the permits she obtained, and declined to address whether she had such an interest in the dry bar license, as it was "not apparent to the Court how that license has any bearing on Dyson's federal constitutional claims." *Id.* at 16-17 & n.5. Dyson continues to assert all of these same alleged property interests in her response in opposition to the present motion to dismiss. Mem. in Opp'n 12. She neither engages with this Court's rationale for rejecting her property interest arguments in dismissing the initial complaint, however, nor makes any new arguments as to ***why*** she possessed any particular property interests. *See id.* For this reason, the Court will analyze these claims on the basis of Dyson's interest in the leasehold, as it did in its prior opinion, and will not repeat the

5

analysis of Dyson's contention that she had a property interest in a dry bar license or in the permits that the City issued.

A.  **Substantive Due Process**

While Dyson does not identify any particular count in her amended complaint as bringing a "substantive due process" claim, it appears that Count I is intended to raise such a claim.[4] "The substantive component of the Due Process Clause bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (citations and internal quotation marks omitted). While challenges to land-use decisions generally rely on the Takings Clause or the Equal Protection Clause, "the Supreme Court has acknowledged at least the theoretical possibility that a land-use decision—if it was 'arbitrary in the constitutional sense' and deprived the plaintiff of property—could constitute a deprivation of property without substantive due process of law." *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487-88 (7th Cir. 2014) (quoting *City of Cuhayoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198-99 (2003)). A land-use decision, however, "must 'shock the conscience' to run afoul of the Constitution." *Id.* at 488. Another way of formulating this requirement is that "a land-use decision must be arbitrary to the point of being 'egregious' to implicate substantive due process." *Id.*

Dyson has not come close to meeting this standard. Having already rejected Dyson's class-of-one Equal Protection Clause claim on the grounds that there were conceivable rational bases for the defendants' decisions, the Court concludes that she has failed to state a substantive due process claim for the same reason. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1070-71 (7th Cir. 2013) (finding no substantive due process violation under rational basis review where plaintiffs failed to negate "every conceivable basis which might support" governmental action). Dyson contends that it was particularly arbitrary and unreasonable for the defendants to deny her the business license and special-use permit **after** having previously issued her the three other permits. *See* Mem. in Opp'n 14. These allegations, however, fall far short of plausibly suggesting that the defendants' actions shocked the conscience or that they were arbitrary to the point of being egregious. Dyson's substantive due process theory therefore fails.[5]

---

[4] This conclusion is supported by the fact that while Count I is simply labeled "Due Process Claim," Counts V and VI are each labeled "procedural due process."

[5] Dyson also fails to address the inadequacy of available state remedies, a point made in the Court's initial opinion and repeated in the City's opening brief. The Seventh Circuit has held that, in cases where the plaintiff complains that she has been unreasonably deprived of a state-created property interest, a claim premised on a substantive due process theory is cognizable only "where the plaintiff shows either the inadequacy of state law remedies or an independent constitutional violation." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (citation and internal quotation marks omitted). This ruling concludes that the amended complaint states no independent constitutional violation and Dyson's response brief does not discuss in any way the availability or adequacy of state remedies to the alleged deprivation of property. Her substantive due process theory falters on this basis as well.

B.  **Takings**

The Takings Clause provides that "private property" shall not "be taken for public use, without just compensation." This has been understood to prohibit both total takings—that is, government actions that completely deprive owners of all economically beneficial use of their property, *see Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)—as well as partial takings by means of regulatory action that diminishes the value of such property. In evaluating whether a partial regulatory taking has taken place, courts consider a variety of factors: "(1) the nature of the government action, (2) the economic impact of the regulation, and (3) the degree of interference with the owner's reasonable investment-based expectations." *Goodpaster*, 736 F.3d at 1074. In this complaint, Dyson appears to raise both of these theories in the alternative. *See* Am. Compl. ¶¶ 88, 91.[6]

In response to this Court's previous opinion, the amended complaint contains some new allegations about the current zoning status of the property. It contends that the property is zoned as "SU: Special Use" under the City's Comprehensive Land Use Map. *Id.* ¶ 15. Dyson has also attached this map as an exhibit along with her response brief. *See* ECF No. 79-1. The complaint states that the "SU: Special Use" zone "is not identified as one of the ten classes of districts outlined in [the] Calumet City Municipal Code." Am. Compl. ¶ 16. It asserts that within this zone, since "there is no allowed usage," all usage within that district "must be approved by a special use permit through the ZBA of Calumet City." *Id.* ¶¶ 92-93. The gist of Dyson's argument seems to be that this represents a total taking because she cannot derive an economic use from her property without first gaining the City's approval. *See* Mem. in Opp'n 9.

This argument must be rejected. Even assuming for the sake of evaluating the motion to dismiss that Dyson is characterizing the municipal law accurately, Dyson cites no authority for the conclusion that requiring city approval before allowing new usages of property within a zone constitutes a total taking. Moreover, her total takings theory would be valid only if the City denied her ***any*** use of the property, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992), but the allegations and materials Dyson has submitted themselves provide evidence that a wide range of usages are in fact allowed within the "SU: Special Use" zone. For one thing, as the defendants correctly point out, the complaint indicates that Dyson's other business, JNJ, operates within that zone. *See* Defs.' Joint Rule 12(b)(6) Mot. to Dismiss Pls.' Am. Compl. ("MTD") 18, ECF No. 70; Am. Compl. ¶ 11. Dyson does not address this point in her response brief. In addition, the Comprehensive Land Use Map indicates that a significant portion of the City is zoned the same way. *See* ECF No. 79-1. It further shows that at least several other commercial ventures are located

---

[6] The parties' briefs also continue to debate whether a takings claim by Dyson would be ripe given Dyson's failure to seek available remedies in state court, but the Supreme Court's recent decision in *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162 (2019), overruling *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), has rendered that debate moot. *See Knick*, 139 S. Ct. at 2167 ("We now conclude that the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled. A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it.").

within the area zoned for special use, including the "River Oaks West Shopping Center & Theaters" and part of the "River Oaks Golf Course." *See id.*

In short, the sum of Dyson's allegations is that her two proposed uses for the property were not granted; that she would need to seek permission from the City for any alternative uses; and that she spent roughly $150,000 renovating the property in anticipation of the Atrium project, *see* Am. Compl. ¶ 40. This is not enough to amount to a total taking. Dyson has not been deprived of ***all*** economically beneficial use of her property; as the Court wrote in its previous opinion, "that the defendants have denied two uses does not mean that the property is now useless." Mem. Op. and Order 23. The existence of both JNJ and other business ventures within the "SU: Special Use" zone reinforces this conclusion. The fact that Dyson may need to seek approval from the City for alternative uses does not render the property worthless.

As for partial takings, while the money Dyson spent provides some evidence of the gross (but not marginal) economic impact of the City's regulatory decisions, the complaint as a whole does not state a claim based on a partial regulatory taking either. With respect to the nature of the government action, a taking "may more readily be found when the interference with property can be characterized as a physical invasion by government" than when "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). The regulation at issue in this case is a "public program" of zoning requirements rather than anything resembling a "physical invasion" of Dyson's property by the government. Nor do the two decisions to deny Dyson's proposed uses constitute anything like a physical invasion. With respect to Dyson's expectations, the amended complaint does not even appear to allege ***when*** the property was zoned for special use. The Court is thus unable to assess to what degree the zoning decision interfered with Dyson's reasonable expectations—or if it could have done so at all. As the Supreme Court has written, the goal of the partial-takings inquiry is to "identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle*, 544 U.S. at 539. This is not such a case. Dyson's claim therefore fails under either takings theory.

### C. Procedural Due Process

Procedural due process generally involves a two-part inquiry: "(1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017). All of Dyson's arguments that she did not receive sufficient process before she was deprived of her property interests appear to be similar to those made in the previous round of briefing, and the Court rejects them for the same reasons. *See* Mem. Op. and Order 19-22. The Court briefly discusses the two primary arguments here.

First, Dyson objects to the fact that, she says, the defendants did not follow their own rules of procedure in denying her requests. As discussed above, it is not at all clear that this is true. *See supra* at 4. More fundamentally, as the Court made clear last time, a "***state*** or ***municipality's*** failure to follow its own rules does not give rise to a federal due process violation." Mem. Op. and Order 21 (emphasis in original); *see also Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705,

711 (7th Cir. 2004) ("[A]n error of state law is not a violation of due process."). Dyson cites no new authority to the contrary.

Second, Dyson argues more generally that she did not receive sufficient process before she was deprived of her property interests. As outlined in this Court's previous opinion, however, in this specific context, "the procedures 'due' in zoning cases are minimal." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994). For example, when "zoning decisions are confided to a legislative rather than a judicial body," the affected individuals "have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process." *Indiana Land Co.*, 378 F.3d at 710. Dyson argues that, in the context of her property being zoned as special use, to require a special-use application and hearing "is not sufficient process when the property has no permitted usage without approval." Mem. in Opp'n 12. Dyson, however, cites no authority in support of this contention, nor does she provide any indication of what she thinks would have qualified as adequate process. Here, as previously noted, Dyson *did* receive notice and the opportunity for a hearing. *See* Mem. Op. and Order 20. She attended the September 8, 2015, City Council meeting, and the ZBA's November hearing was a public one; there is no allegation that she did not have notice of it. *See* Am. Compl. ¶¶ 41, 45. This is adequate process in the context of the "minimal" procedures due in such cases. For these reasons, Counts V and VI are dismissed.

### III. Conspiracy (Count III)

Dyson's final constitutional claim is her § 1983 civil-conspiracy claim, set out in Count III. Dyson again contends that the individual defendants formed a conspiracy to violate her constitutional rights. Am. Compl. ¶ 96. As in this Court's previous opinion, however, "Dyson cannot maintain a conspiracy claim when all of her underlying constitutional violations have been dismissed." Mem. Op. and Order 24. The Court reiterates that "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). There can be no § 1983 claim for conspiracy in the absence of an underlying constitutional violation. As outlined in the previous sections of this opinion, Dyson's amended complaint has failed to state a claim under any of her proffered federal constitutional theories. As a result, she has failed to state a claim for conspiracy under § 1983 as well. Count III is accordingly dismissed.

### IV. Legislative and Quasi-Judicial Immunity

Even if Dyson had stated a claim under any of her federal theories, there would still be another obstacle to her suit as against the individual defendants: the doctrines of legislative immunity and quasi-judicial immunity. In this round of briefing, Zwart and Qualkinbush contend that they are entitled to immunity under both of these theories. *See* MTD 25-29. Each of these doctrines provides for absolute immunity for those it protects. Under legislative immunity, state, regional, and local legislators are entitled to absolute immunity in § 1983 suits for all actions taken in the sphere of legitimate legislative activity. *Bogan v. Scott-Harris*, 523 U.S. 44, 49-54 (1998); *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). Quasi-judicial immunity shields "quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions." *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004).

The conduct at the center of Dyson's amended complaint is the denial of her special-use petition. The ZBA held a public hearing on her special-use application. Am. Compl. ¶ 45. It issued

9

a "Finding of Fact and Recommendation" in which it failed to favorably recommend the petition to the City Council. *Id.* The City Council, in turn, adopted the ZBA's recommendation, codifying the denial of the request for a special use. *Id.* ¶ 59. Eight days later, the special-use request having been denied, Dyson was informed "that she would not be issued a business license or a liquor license to operate a banquet facility." *Id.* ¶ 60.

Both Zwart and Qualkinbush are entitled to absolute immunity. Their conduct might reasonably be viewed as either legislative or quasi-judicial—but it was certainly one or the other, and either theory suffices. With respect to legislative immunity, whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Similarly, the legislative-immunity analysis turns on the function an individual is performing rather than his or her formal title or position within the government. *See Rateree v. Rockett*, 852 F.2d 946, 951 (7th Cir. 1988). Courts have granted absolute legislative immunity based on conduct such as "(1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process." *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997). The Illinois General Assembly has expressed the position that a municipality's decision in regard to a special-use petition is a "legislative decision." 65 ILCS 5/11-13-25.

The actions taken by Zwart and Qualkinbush meet these criteria. To begin with Zwart, all of the allegations against her stem from her role as chairman of the ZBA. In assessing Dyson's special-use application, the ZBA held a public hearing, gathered facts, and voted on whether to favorably recommend the proposal. Zwart also personally authored the "Finding of Fact and Recommendation." Am. Compl. ¶ 58. These actions closely mirror those taken by legislative committees, which have long been understood as an established example of legislative conduct. *See Tenney*, 341 U.S. at 377-78 (describing investigations as "an established part of representative government" in determining that a state legislative committee was acting in a legislative capacity). All of these actions could reasonably be understood to fall within the sphere of legitimate legislative activity. To the extent that they do, Zwart is entitled to legislative immunity.

Similarly, as against Qualkinbush, Dyson's claims are primarily based on her role in adopting and codifying the ZBA's denial of a special use.[7] *See* Am. Compl. ¶ 111 ("On December 10, 2015 the City Council and Mayor Qualkinbush erroneously adopted the Zoning Board of Appeals Findings of Fact and Recommendation and denied Plaintiffs' proposed special use without due process."). When an executive official's actions constitute "integral steps in the legislative process," they are considered legislative actions as well. *Bogan*, 523 U.S. at 55 (concluding that a mayor's acts of introducing a budget and signing an ordinance were legislative).

---

[7] It appears to the Court that Dyson may also intend to rest her claims against Qualkinbush on the denial or lack of decision on her applications for a liquor license and business license. The amended complaint is not entirely clear on which people or offices within the City government it alleges are responsible for these actions (or non-actions). In any event, to the extent that Dyson is making this claim, the Court understands these actions to be necessary follow-on consequences of the decision to deny the special use.

10

Qualkinbush's role in choosing whether or not to adopt the recommendations of the ZBA was an "integral step" in the same legislative process.

In the alternative, Zwart's and Qualkinbush's conduct might also be described as quasi-judicial. Absolute immunity "is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial officer," or, put more simply, when they are "acting in an adjudicative capacity." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 521-22 (7th Cir. 2001). This analysis, too, is based on the "nature of the responsibilities of the official in question" rather than the official's title or rank. *Id.* at 521.

In a case quite similar to this one, *Irshad Learning Ctr. v. County of DuPage*, 804 F. Supp. 2d 697 (N.D. Ill. 2011), Judge Pallmeyer held that the individual members of a county's zoning board of appeals and its county board were entitled to absolute quasi-judicial immunity for their role in the denial of a plaintiff's conditional-use permit. *See id.* at 708-11. *Irshad* drew on a previous Third Circuit decision, *Dotzel v. Ashbridge*, 438 F.3d 320 (3d Cir. 2006), which analyzed three factors in concluding that quasi-judicial immunity applied to a zoning decision. The questions that the court analyzed were as follows:

> First, does a Board Member, like a judge, perform a traditional 'adjudicatory' function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from political influence)? Second, does a Board Member, like a judge, decide cases sufficiently controversial that in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect [the parties'] constitutional rights?

*Irshad*, 804 F. Supp. 2d at 708 (quoting *Dotzel*, 438 F.3d at 325).

This Court finds the analysis of the applicability of quasi-judicial immunity in *Irshad* persuasive.[8] It concludes, similarly, that to the extent that Zwart's and Qualkinbush's actions are considered quasi-judicial, they are entitled to absolute immunity. In particular, the ZBA's actions in this case were adjudicatory in that the board evaluated the facts of Dyson's situation and assessed whether her application met the requirements for a special use spelled out in the municipal code. Qualkinbush and the City Council did the same in ratifying this result. In addition, these types of decisions are sufficiently controversial that in the absence of absolute immunity, the officials responsible might be subject to numerous damages actions (such as this one). *See id.* at 711 ("The threat of retaliatory lawsuits against individual members is real, and could interfere with the functioning of the County Board and ZBA.").

Dyson has scarcely any response to any of this. In her response brief, she spends less than a page on the issue of legislative immunity, and does not address quasi-judicial immunity at all.

---

[8] In light of its conclusion that the doctrine of quasi-judicial immunity applied, *Irshad* did not address the alternative ground of legislative immunity, which had also been asserted by the individual defendants in that case.

*See* Mem. in Opp'n 20. Her only argument as to why Zwart's and Qualkinbush's conduct was not "legislative in nature" is that these defendants "engaged in a conspiracy to deprive Plaintiffs of their property interests and due process rights. This behavior cannot be classified as a legislative act or merely voting on legislation." *Id.* In other words, Dyson does not even contest that the specific actions at issue—such as the ZBA's hearing, report, and recommendation, or the City Council's adoption of that recommendation—are either legislative or quasi-judicial. She simply argues, instead, that the defendants separately engaged in the act of forming a conspiracy against her. The problem, however, is that there are no concrete allegations in the complaint that would support such a conclusion. These allegations are wholly "conclusory" and thus are not entitled "to the presumption of truth." *Iqbal*, 556 U.S. at 681. Because all of the specific allegations made in the complaint against Zwart and Qualkinbush describe conduct that is either of a legislative or quasi-judicial nature, those two individual defendants would be entitled to absolute immunity even if Dyson had stated a claim under any of her federal theories.

\*   \*   \*

In summary, Dyson has again failed to state a claim for any violation of her federal constitutional rights. The Court thus dismisses her federal claims pursuant to Rule 12(b)(6). In addition, the Court exercises its discretion to relinquish its supplemental jurisdiction over Dyson's state-law claims. See 28 U.S.C. § 1367(c)(3); *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims."). Because the Court concludes that, in view of Dyson's inability to cure the deficiencies noted in her first complaint, it would be futile to allow Dyson to amend her complaint once again, this dismissal is with prejudice. Civil case terminated.

Dated: August 20, 2019

John J. Tharp, Jr.
United States District Judge